5329.

(Court of Appeal, Parish of Orleans).

## DOMINIQUE OUSSET vs. HARRY S. GERSON.

A vendor, under an agreement of promise of sale, may be legally put in default in accordance with Revised Civil Code, 1911, by a demand in writing to perform, the provisions of Code of Practice, 410 *et seq,* having no application.

Appeal from the Civil District Court, Division "E."

Chas. A. Butler, for plaintiff and appellee.

A. D. Danziger, for defendant and appellant.

GODCHAUX, J.—On June 26, 1910, an agreement of promise of sale was entered between the plaintiff, Ousset, and the defendant, Gerson, whereby the latter, as vendor, agreed to sell to the former, as purchaser, "title to be delivered to said purchaser not later than October 1, 1910," certain lots of ground in this city, then owned by and standing in the name of Charles Grillot, the act reciting the fact of "the title thereto not yet being taken by said Gerson," who, in fact then held an option thereon from Grillot expiring September 28, 1910. Two hundred dollars was deposited by Ousset as earnest money, and it was stipulated that the notarial act of sale should be executed before Charles A. Butler, Esq., who also was and is the attorney representing Ousset, the purchaser, in this transaction. The agreement further stipulated that the title to said lots was "to be examined by Charles A. Butler, attorney-at-law, and his decision as to the validity to be final; and in the event said title be found not good and is rejected, or in the event said vendor should fail to comply with this contract, the cost

of examination thereof, which is hereby fixed at $55, is to paid by said Gerson.''

Neither party seemed anxious or ready to consumate the transaction on or before as late a date as October 10, 1910, Gerson not having by that date taken title from Grillot, and Ousset being unprepared because Mr. Butler, who was to examine the title and who had been designated as notary, had just then returned after a month's absence from the city. It appears to have been understood, however, that the promise of sale would be carried out as soon as Mr. Butler should return and accordingly Ousset, on several occasions, between October 8th and 15th, called upon Gerson to fulfill his engagement, without securing the latter any more definite or satisfactory answer than that he (Gerson) would consumate the agreement by having the act of sale of the property passed direct from Grillot to Ousset. Finally on October 18, 1910, at the instance of Mr. Butler, who had previously advised Ousset to have these personal interviews with Gerson before resorting to harsher measures, delivered a formal letter to Gerson wherein, after reciting in full the contract between them, he stated:

> "I now demand that you transfer and deliver to me according to law the property above described under all the conditions specified in said agreement, on or before Thursday, October 20, 1910, in default of which I demand the return of the sum of two hundred dollars paid by me to bind said contract, and that you further pay to Charles A. Butler, attorney-at-law, the sum of fifty-five dollars for examination of title to said property as provided for in said agreement."

To this letter the following reply was addressed by Gerson's attorney to Mr. Butler on October 19th and de-

livered to the latter on the morning of October 20th:

"I send you herewith the plan of the property to be purchased by your client, so that you may prepare your act. The sale is to be made direct by Charles Grillot. Please let me know when you will be ready and I will endeavor to have the parties present in your office at the appointed hour to close the matter."

On the same day (October 20th) Gerson received the following reply:

"I am directed by Mr. Ousset to inform you that he has no business relation with Mr. Grillot concerning the property in question and must, therefore, refuse to take title from him; and he demands that Mr. Gerson comply with his agreement of June 24, 1910, in accordance with the terms of his letter of October 18, 1910."

At 5 P. M., on the same day (October 20th), the following letter from Gerson's attorney was left at Mr. Butler's office, but was not received by him until the 21st:

"Answering yours of even date, I beg to say that Mr. Gerson will take title to-morrow morning from Mr. Grillot and he will then be in a position to make deed direct to your client. Under the circumstances I would ask that you apply for the required certificates in the name of Mr. Gerson and inform me when you are ready to pass the act."

To this letter Mr. Butler replied on the 22nd as follows:

"Yours of October 20th * * * was submitted to my client, who directs me to inform you that Mr. Gerson having failed to comply with his contract, either at the time specified therein or at the time specified in his letter of default, by making tender of title, he now demands that he be reimbursed at once

the sum of $200, paid by him to bind said sale, and also the sum of $55, amount of my fee as agreed upon with Mr. Gerson, and embodied in the contract but this offer must not be looked upon as a waiver in the event that suit is forced upon him.''

This letter was apparently received and answered on the same day it was dated, Saturday, October 22, 1910, but the answer, which is as follows, did not reach Mr. Butler till Monday, October 24th.

"I desire to state that my client, Mr. Gerson, refuses to return the deposit in his hands made by Mr. Ousset, or to pay your attorney's fees, but he will insist upon Mr. Ousset taking title to the property the latter has agreed to purchase."

No further communication passed between the parties and on October 26th the present suit was filed by Ousset for the recovery of double the amount of his deposit of $200, and of the sum of $55, the agreed fee for examination of title. The answer, filed on November 16, 1910, denied that defendant was ever in default, averred that he was at all times ready, able and willing to carry out the agreement, and prayed for the dismissal of the suit and a judgment in defendant's favor ordering plaintiff to specifically perform his agreement to purchase the property.

The record further shows that though Gerson had announced in the foregoing correspondence that he would take title from Grillot on October 21st, he did not in fact do so until November 18, 1911; so that neither at the time that suit was filed nor when Gerson's answer was filed wherein he alleged his readiness, ability and willingness to carry out his agreement, was he in fact in a position to formally make deed to plaintiff.

There was judgment in plaintiff's favor as prayed for and the defendant has appealed.

Defendant charges that he was not put in default and that consequently it was error for the lower court to have rescinded the sale, his contention being that the formal requisites of Article 410, et seq, of the Code of Practice should have been followed in order to place him legally in default. The articles have reference to the manner in which a debtor shall proceed to place a creditor in default and have no application to a case where it is sought to place the debtor in default, for the latter contingency is governed by the provision of Revised Civil Code, 1911 et seq.

**Hayward vs. Campbell, 4 Ct. of App. 96, affirmed in 119 La. 56; Robins vs. Martin, 43 An. 488.**

Knowing that the title was to be passed upon the return of Mr. Butler on October 10th, it was the duty of the vendor to have been then prepared to execute his agreement. Not only was he wholly unprepared, but when the purchaser, after that date, orally demanded that the sale be consumated, the vendor met these demands by an offer to perform in a manner that did violence to the terms of the agreement—a course of conduct that was persisted in by the vendor after formal notice had been served and until the delay allotted him to perform his agreement had expired. The letter of October 18th calling upon the vendor to perform on or before October 20th, was sufficient to place him in mora under the principles announced in the authorities cited, and his offer to perform, received on the 21st, came too late.

## II

Defendant contends that there is no evidence that Mr. Butler examined the title in question and that consequently the judgment is erroneous in allowing attorney's fees.

Ousset's repeated demands, under Mr. Butler's advice that the sale be perfected, was an approval of the title

on the part of both and particularly was it a "decision" in favor of its validity on the part of the latter within the meaning of the agreement of June 24th. The nature and extent of the examination upon which this "decision" was based are matters with which defendant has no concern. Having "failed to comply with the contract" after the title had been approved, the defendant is bound for the fees.

There is no error in the judgment and it is affirmed.

May 29, 1911.

5287.

(Court of Appeal, Parish of Orleans).

————o————